IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00871-KLM

BRADLEY D. OASTER,

      Plaintiff,

v.

STANLEY ROBERTSON,

      Defendant.

_____

# ORDER
_____

## ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX

This matter is before the Court[1] on Defendant's **Motion to Dismiss Pursuant to 12(b)(1), 12(b)(2), and 12(b)(6) and if Necessary, Request for Evidentiary Hearing** [#18][2] (the "Motion").  Plaintiff filed a Response [#22] in opposition to the motion and Defendant filed a Reply [#23].  On October 9, 2015, the Court entered a Minute Order [#30] informing the parties that it was converting Defendant's Motion [#18] filed pursuant to Rule 12(b)(6)[3] to a motion for summary judgment pursuant to Rule 56.  *See Minute Order* [#30].  As a

_____

[1] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2.  *See generally Consent Form* [#20].

[2] "[#18]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's electronic case filing and management system (CM/ECF).  This convention is used throughout the Order.

[3] Rule 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Thus, although Plaintiff filed the Motion pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6), only the Rule 12(b)(6) portion of the Motion has been converted to a Rule 56 motion for summary judgment. *See Minute Order* [#30].

result of the conversion of the Motion, the Court allowed the parties the opportunity to file supplemental briefs. *Id.* The parties both filed supplemental briefs, which the Court has reviewed. *See Am. Suppl. Brief in Support* ("Suppl. Brief in Support") [#35]; *Response Brief to Defendant's Suppl. Brief in Support* ("Suppl. Response") [#37]. The Court has also reviewed the Motion, the Response, the Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#18] is **GRANTED IN PART** and **DENIED IN PART**.

## I. Background

### A.    Factual Background

In 2000, Plaintiff Bradley Oaster and Defendant Stanley Robinson entered into a business relationship which centered on the design and development of various church facilities throughout the United States. *Am. Compl.* [#14] ¶ 2. Plaintiff alleges that he and Defendant, an architect, entered into a personal services contract in 2000 whereby Defendant would be paid for animation services and that, starting in 2006, this contract was expanded to include supplemental drafting services involving the addition of supplemental detail to existing schematic designs. *Id.* According to Plaintiff, the two agreed that the work product produced by Defendant would remain the property of Plaintiff, and also that the original schematic designs to which Defendant added detail were created and owned by either Plaintiff or Plaintiff's business partner.[4] *Id.* ¶¶ 5, 11. Plaintiff alleges that he has registered copyrights on the designs. *Id.* ¶ 8. The Complaint also states that the parties worked on twenty-five church development projects together over their ten-year business

---

[4] Plaintiff's business partner, Pat Morgan, has assigned his rights in this matter to Plaintiff. *See generally Assignment of Claim* [#14-1].

relationship. *Id.* ¶ 10. While the parties worked together, Plaintiff alleges that the Defendant had access to all planning, development, and design information related to each project. *Id.* ¶ 12.

At the outset, Defendant disagrees on the exact characterization of the parties' relationship. Specifically, Defendant maintains that although he entered into the contract with Plaintiff in his individual capacity, from 2003 onwards the only work he performed was in his official capacity as an owner of two companies he had created in Texas: Gone Virtual Studios, Inc. ("GVS") and Halo Architects, Inc. ("Halo"). *Brief in Support of Motion to Dismiss* [#19] ("Brief in Support") at 2. Thus, Defendant claims that his business relationship with Plaintiff can be divided into two discrete periods: (1) the period of time from 2000 to 2003 where Defendant and Plaintiff had a business relationship as two individuals working together; and (2) the period of time from 2003 to 2010, where Defendant worked with Plaintiff in his capacity as an officer of either GVS or Halo. *Id.*

Regardless, both parties agree that the relationship ended in either late 2009 or 2010. *Id.*; *Am. Compl.* [#14] ¶ 2. On January 5, 2010, Defendant's lawyer – writing on behalf of Defendant and Defendant's companies, Halo and GVS – sent Plaintiff a letter demanding that Plaintiff stop using schematic designs prepared by Halo, GVS, or Defendant. *Appendix in Support of Motion to Dismiss* [#19-1] at 7. Plaintiff then sent Defendant a letter in which he outlined several things that he believed Defendant was doing wrong. *Appendix in Support of Summary Judgment* [#33] at 21. In the letter, Plaintiff informed Defendant that Plaintiff was planning to bring these allegations of wrongdoing to the proper authorities. *Id.* One of the allegations reads "[Defendant] ha[s] attempted to hijack Harvestime's project by intentionally and willfully going around Harvestime and working directly with Harvestime's

client." *Id.* The letter goes on to state "[Defendant is] guilty of torsos [sic] interference with a contractual relationship[.]" *Id.*

In 2013, Plaintiff alleges that he discovered that Defendant told one of Plaintiff's clients that Defendant owned Plaintiff's copyrighted designs. *Am. Compl.* [#14] ¶ 14. Plaintiff claims that Defendant told the client that he was the owner of the designs in an attempt to persuade the client to terminate its relationship with Plaintiff. *Id.* Additionally, Plaintiff alleges that he learned that Defendant had disparaged him while talking to the client, telling the client that Plaintiff often used "bait and switch" sales techniques. *Id.* According to Plaintiff, based on this knowledge, in November 2014 Plaintiff began investigating and found that Defendant was misrepresenting to the public that Defendant was the owner of the copyrighted designs, and Defendant had the right to use them and sell them. *Id.* ¶ 15.

During Plaintiff's investigation, Plaintiff also alleges he learned that Defendant sold Plaintiff's protected designs on a website, www.worshipplaces.com, but that Defendant refused to stop selling the designs and did not compensate Plaintiff in any way for use of the designs. *Id.* ¶¶ 17-19. Plaintiff alleges that this website is Defendant's website. *Id.* Again, however, Defendant disagrees with this characterization, and claims that the website is not owned and operated by him, but is owned and operated by GVS. *Brief in Support* [#19] at 12. Additionally, Plaintiff claims that Defendant exploited Plaintiff's confidential lists of potential clients and encouraged these clients to work with Defendant instead of Plaintiff. *Am. Compl.* [#14] ¶ 20.

**B.    Procedural History**

On March 2, 2015, Plaintiff filed a complaint in state court alleging numerous claims

against Defendant. *State Court Compl.* [#1-3].  Defendant filed a Notice of Removal on April 24, 2015 pursuant to 28 U.S.C. § 1441(b).  *Id.*  On May 1, 2015, Defendant filed a motion to dismiss, and Plaintiff then responded by filing an Amended Complaint on May 19, 2015. *Motion to Dismiss* [#6]; *Am. Compl.* [#14].  Plaintiff's Amended Complaint brings eleven[5] claims against Defendant: (1) breach of contract; (2) fraud; (3) conversion; (4) civil theft; (5) slander; (6) breach of fiduciary duty; (7) interference with contract; (8) violation of the Colorado Consumer Protection Act, C.R.S. § 6-1-101, *et seq.*; (9) replevin; (10) unjust enrichment; and (11) copyright infringement.  *Id.* ¶¶ 24-83.  The Court then denied the motion to dismiss as moot.  *Minute Order* [#16].

Subsequently, Defendant filed the present Motion to Dismiss on June 8, 2015. *Motion* [#18].  In support of his Motion to Dismiss, Defendant provides an appendix containing an affidavit executed by himself, the aforementioned 2010 letter from his counsel to Plaintiff formally severing the business relationship, and the certificates of formation of GVS and Halo.  *Appendix in Support of Motion to Dismiss* [#19-1].  Additionally, Plaintiff cites to his own affidavit in response to Defendant's Motion to Dismiss.  *See Response* [#22]; *Affidavit of Bradley D. Oaster* [#15-1].

In the original briefing provided with the Motion, Defendant requested that the Court "dismiss this entire cause of action pursuant to Rule 12(b)(1), or in the alternative, Rule 56

---

[5]  Plaintiff lists thirteen claims in his complaint, but Plaintiff's sixth claim, bad faith breach of contract, is not recognized as a separate cause of action in Colorado.  *Ohio Spine Network, Inc. v. Lanx, Inc.*, No. 10-cv-02402-CMA-MJW, 2012 WL 1596915, at *1 (D. Colo. May 7, 2012) (stating that except in the case of a breach of an insurance contract, Colorado law does not recognize a claim for bad faith breach of contract); *see also Energex Enters., Inc. v. Anthony Doors, Inc.*, 250 F.Supp.2d 1278, 1284 (D. Colo. 2003); *William H. White Co. v. B & A Mfg. Co.*, 794 P.2d 1099, 1101 (Colo. App. 1990).  Further, Plaintiff's eleventh claim, injunction, is a remedy, not a cause of action.

because all of the claims are barred by the applicable statute of limitations." *Brief in Support* [#19] at 11.   However, because the evidence put forth by Defendant pertains to whether Plaintiff has sufficiently alleged a claim (as discussed below), on October 9, 2015, the Court converted the Motion to a Rule 56 Motion for Summary Judgment pursuant to Rule 12(d).[6] *Minute Order* [#30].   The parties submitted supplemental briefing to the Court pursuant to the Court's Order.   *See Suppl. Brief in Support* [#35]; *Suppl. Response* [#37].   Defendant also submitted a supplemental appendix of evidence in support of the Motion; similarly, Plaintiff has provided a supplemental affidavit.   *See Appendices in Support of Motion for Summary Judgment* [#33, #34]; *Suppl. Affidavit of Bradley D. Oaster* [#37-2] ("Suppl. Oaster Affidavit").

On January 11, 2016, the Court granted in part Defendant's motion to strike portions of the supplemental affidavit provided by Plaintiff.   *Order* [#40].   Specifically, the Court struck portions of paragraph 9, all of paragraph 10 except for the first and last sentences, the last two sentences of paragraph 11, and a portion of paragraph 14 on the basis that these statements were inadmissable hearsay.   *Id.*   Thus, in analyzing the parties' respective arguments, the Court does not consider the portions of Plaintiff's affidavit stricken by the Court.

## II.  Discussion

Defendant's Motion makes three arguments: (1) lack of personal jurisdiction; (2) lack

---

[6]  The Court has not converted the Rule 12(b)(2) portion of the Motion to a Rule 56 motion for summary judgment.   *See Minute Order* [#30]; Fed. R. Civ. P. 12(d).   Thus, the jurisdictional issues presented by Defendant are considered pursuant to a motion to dismiss pursuant to Rule 12(b)(2) standard.   Although a portion of Defendant's motion requested dismissal under Rule 12(b)(1), the Court has construed Defendant's argument as pertaining to the merits of Plaintiff's claims.

of subject matter jurisdiction; and (3) failure to state a claim pursuant to Rule 12(b)(6).  *Brief in Support* [#19] at 1.  In the alternative, Defendant requests that the Court transfer this matter to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404.  *Id.* at 2.

As a preliminary matter, the Court notes that Defendant's second argument – lack of subject matter jurisdiction – is premised on the contention that the Court lacks jurisdiction because the statutes of limitations have run on Plaintiff's claims.  *Brief in Support* [#19] at 11.  However, "[i]f the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim[.]"  *Jones v. Bock*, 549 U.S. 199, 215 (2007).  Thus, because the statute of limitations issues are not jurisdictional, this argument must be analyzed pursuant to Rule 56 rather than Rule 12(b)(1).[7]

Accordingly, the Court will address Defendant's arguments as follows: (A) dismissal for lack of personal jurisdiction pursuant to Rule 12(b)(2); (B) entry of summary judgment in Defendant's favor pursuant to Rule 56; and (C) the Court should transfer this action pursuant to 28 U.S.C. § 1404.  The Court's analysis of Defendant's Rule 56 arguments will consist of two subparts: (1) Defendant's argument that, as a threshold matter, Plaintiff's claims are barred by the applicable statutes of limitations and (2) Defendant's argument

---

[7] Defendant makes no other argument concerning whether the Court lacks subject matter jurisdiction.  *Brief in Support* [#19].  Moreover, the Court notes that subject matter jurisdiction is appropriate here pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), as Plaintiff alleges a federal copyright claim against Defendant.  *Am. Compl.* [#14] ¶¶ 72-83.  However, although Defendant originally removed this action pursuant to 28 U.S.C. § 1441(b) (removal by a defendant based on diversity jurisdiction), neither Plaintiff's original complaint nor the Amended Complaint allege any amount in controversy.  *See Am. Compl.* [#14].  Here, removal on the basis of diversity of citizenship is likely improper.  28 U.S.C. § 1332.

that, substantively, no genuine dispute of any material fact exists and judgment should be entered in favor of Defendant.

## A.    Motion to Dismiss for Lack of Personal Jurisdiction

The Court analyzes Defendant's argument that the Court lacks personal jurisdiction pursuant to Rule 12(b)(2).  A plaintiff bears the burden of establishing personal jurisdiction over a defendant.  *Behagen v. Amateur Basketball Ass'n of the United States*, 744 F.2d 731, 733 (10th Cir. 1984).  Before trial, a plaintiff need only make a prima facie showing of jurisdiction.  *Id.*  The Court accepts the well-pled allegations (namely the plausible, nonconclusory, and nonspeculative facts) of the operative pleading as true to determine whether the plaintiff has made a prima facie showing that the defendants are subject to the Court's personal jurisdiction.  *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).  The Court "may also consider affidavits and other written materials submitted by the parties."  *Impact Prods., Inc. v. Impact Prods., LLC*, 341 F. Supp. 2d 1186, 1189 (D. Colo. 2004).  However, any factual disputes are resolved in the plaintiff's favor. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074-75 (10th Cir. 2004).

The exercise of personal jurisdiction over a non-resident defendant must satisfy the requirements of the forum state's long-arm statute as well as constitutional due process requirements.  *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 145 (10th Cir. 1992).  Colorado's long-arm statute "is to be interpreted as extending jurisdiction of our state courts to the fullest extent permitted by the due process clause of the United States Constitution." *Mr. Steak, Inc. v. Dist. Court In & For Second Judicial Dist.*, 194 Colo. 519, 521 (1978). Therefore, if jurisdiction is consistent with the due process clause, Colorado's long-arm statute authorizes jurisdiction over a nonresident defendant.  Under the due process clause

of the Fourteenth Amendment, personal jurisdiction may not be asserted over a party unless that party has sufficient "minimum contacts" with the state, so that the imposition of jurisdiction would not violate "traditional notions of fair play and substantial justice." *Helicopteros Nacionales De Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Here, Defendant contends that Plaintiff does not allege facts to demonstrate the Court's general or specific jurisdiction over him. *Brief in Support* [#19] at 7. Defendant further argues that his contacts with Plaintiff (and thus Colorado) were not on a personal level, but through Defendant's business, and thus, Defendant himself has no contacts with Colorado. *Id.* at 8. In response, Plaintiff directs the Courts's attention to a number of ways in which Defendant has contacts with Colorado, including the fact that Defendant used to have a professional license from Colorado, and previously resided in Colorado. *Response* [#22] at 5-7.

### 1.    General jurisdiction.

Under principles of general jurisdiction, a nonresident defendant may be subject to a state's jurisdiction even where the alleged injury is unrelated to the defendant's contacts with the forum state. If a defendant's contacts with a state are strong enough, the state may assert jurisdiction over a defendant on any matter, whether or not it arises out of the defendant's contacts with the state. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446 (1952). General jurisdiction is appropriate only when a defendant has "continuous and systematic" general business contacts with the forum state, *Helicopteros*, 466 U.S. at 415, so that the defendant could reasonably anticipate being haled into court in that forum. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

Plaintiff does not allege sufficient facts to demonstrate that the Court has general jurisdiction over Defendant.  General jurisdiction is appropriate only when a defendant has "continuous and systematic" general business contacts with the forum state.  *Helicopteros*, 466 U.S. at 415.  Plaintiff's only allegation to this effect is the conclusory statement "at all material times, [Defendant] did and continues to do business in Colorado."  *Am. Compl.* [#14] at 1.  Plaintiff also includes facts about Defendant that demonstrate that Colorado may have previously had general jurisdiction over Defendant (e.g., Defendant previously lived in Colorado and had a professional license issued by Colorado).  *Id.*  However, it is undisputed that Defendant has lived outside of Colorado since 2002.  *Reply* [#18] at 8. Plaintiff offers no support to show that an individual's prior connections continue into perpetuity, and to so find would be illogical.  Plaintiff has not demonstrated that the Court has general jurisdiction over Defendant.

## 2.    Specific jurisdiction.

When pervasive contacts to assert a finding of general personal jurisdiction are lacking, specific jurisdiction may nevertheless be asserted if a defendant has "purposefully directed" his activities toward the forum state, and if the lawsuit is based upon injuries that "arise out of" or "relate to" the defendant's contacts with the state.  *Burger King*, 471 U.S. at 472.  "Because a state's sovereignty is territorial in nature, a defendant's contacts with the forum state must be sufficient such that, notwithstanding [his] lack of physical presence in the state, the state's exercise of sovereignty over [him] can be described as fair and just." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).  To implement this principle, courts typically make three inquiries: (1) whether the defendant purposefully directed his activities at residents of the forum state; (2) whether the plaintiff's

injury arose from those purposefully directed activities; and (3) whether exercising jurisdiction would offend traditional notions of fair play and substantial justice. *Id.*

> a.   *Contract claims.*

Plaintiff must allege sufficient facts to demonstrate that Defendant purposefully directed his activities at residents of the forum state. *Dudnikov*, 514 F.3d at 1070. Plaintiff's allegations demonstrate this to be the case. It is undisputed that Defendant entered into a contract with Plaintiff, and worked for him over a ten-year period. Plaintiff is a Colorado resident, and Plaintiff worked from an office located in Colorado while Defendant performed his work for and submitted it to Plaintiff. *Am. Compl.* [#14] ¶ 1, 4. This is not to say that every time a party enters into a contract with a nonresident that the party has sufficient connections with the other party's home forum. "If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." *Burger King*, 471 U.S. at 478 (emphasis in original). Prior negotiations and contemplated future consequences, along with the terms of the contract[8] and the parties' actual course of dealing, must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum. *Id.* at 479.

The facts of this case mirror *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054 (10th Cir. 2008). In *Sports Sci.*, the plaintiff (a Colorado company) and defendant (a British company) entered into an contract allowing defendant to sell plaintiff's products in

---

[8] The Court notes that the terms of the contract itself cannot be examined because neither party provided the Court with the contract or any language from the contract.

England.  *Id.* at 1056.  The parties did business together via telephone and e-mail for six years, until the defendant stopped paying the plaintiff.  *Id.*  The plaintiff brought contract and tort claims against the defendant.  *Id.*  The district court held that it did not have specific personal jurisdiction over defendant, and dismissed the claims.  *Id.*

The 10th Circuit reversed, finding that specific personal jurisdiction did exist based on the contract and business relationship between the two parties.  *Id.* at 1060.  The court noted that the contract evidenced prior negotiations and future consequences of a continuing business relationship.  *Id.* at 1058.  In making this determination, the court also relied on the phone calls, letters, facsimiles, and e-mails which "provided additional evidence that the [foreign defendant] pursued a continuing business relationship with [the plaintiff]." *Id.* at 1059 (quoting *Pro Axess v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1278 (10th Cir. 2005)). In summary, the court stated: "Quite simply, defendants reached out to become AST's European distributor, the relationship was allegedly memorialized in [a] contract, and the relationship lasted for a . . . period of seven years.  It should not be a surprise to defendants that this continuing relationship and the resulting obligations to plaintiff subjects them to regulation and sanctions in Colorado for the consequences of their alleged activities." *Sports Sci.*, 514 F.3d at 1059-60.

Based on Plaintiff's allegations, the scope and length of the agreement along with the parties' course of dealing suggest that Defendant intended to engage in a significant amount of business with Plaintiff and Plaintiff's Colorado-based business.  Plaintiff and Defendant did not agree to work on one project together and go their separate ways.  The contract they entered into facilitated a business relationship that lasted ten years. *Am. Compl.* [#14] ¶ 2. Over the course of those ten years, Plaintiff paid Defendant $1,287,607. *Id.* ¶ 3.  Halfway

through their business relationship, Defendant increased the role he played in Plaintiff's business operations. *Id.* ¶ 2. These contacts between Defendant and Plaintiff in Colorado are not the type of "random," "fortuitous," or "attenuated" contacts that are insufficient to give a court jurisdiction over a defendant. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 ,774 (1984). Just as in *Sports Science*, Defendant should not be surprised that, as a result of the continuing business relationship with Plaintiff, Colorado courts have personal jurisdiction over him with regard to claims brought based on those contacts.

Having made this determination, the Court must examine whether Plaintiff sufficiently alleges that his injuries arose from these activities. *Dudnikov*, 514 F.3d at 1070. Plaintiff alleges that Defendant breached the contract that the parties entered into, and that the breach caused Plaintiff damages. *See generally Am. Compl.* [#14]. Plaintiff's other claims relate to the business relationship between the parties as well. If not for the business relationship, Defendant would never have had access to the intellectual property at issue, and Defendant would never have had access to Plaintiff's client lists.

Because the Court has determined that the contract and business relationship between the parties constituted purposeful availment on the part of Defendant, any damages that relate to the business relationship between the parties stem from Defendant's actions directed at Colorado. Without commenting on the legitimacy of Plaintiff's claims, the Court, based on the findings above, finds that Plaintiff's allegations establish that his injuries arose from Defendant's contacts with Colorado.

The only dispute Defendant raises with respect to personal jurisdiction is that Defendant, individually, did not do business with Plaintiff after 2003. *Brief in Support* [#19] at 8. Thus, Defendant argues, because all of the contractual disputes concern a period of

time (i.e., after 2003) when Defendant was doing business with Plaintiff in his capacity as an officer of GVS or Halo, there is no specific jurisdiction with respect to Defendant individually. *Suppl. Brief in Support* [#35] at 7. However, the evidence cited to by Defendant does not support this assertion. Specifically, Defendant cites to an affidavit executed by Defendant. *Id.* However, this affidavit merely asserts the following: "Neither **myself**, nor GVS or Halo Architects, have had any business relationship or any relationship . . . with [Plaintiff] **since 2010**." *Appendix in Support of Summary Judgment* [#33] at 4 (emphasis added).[9]

Nonetheless, even were the Court to accept Defendant's assertion that Defendant only acted as an officer of one of his corporations, the outcome would still be the same. Although Defendant does not address the issue in his briefing, his argument implicates the fiduciary shield doctrine. Under the fiduciary shield doctrine, "a nonresident corporate agent generally is not individually subject to a court's jurisdiction based on acts undertaken on behalf of the corporation." *Newsome v. Gallacher*, 722 F.3d 1257, 1275 (10th Cir. 2013) (quotation marks and citation omitted). However, "under *Newsome*, the threshold question is whether Colorado recognizes the fiduciary shield doctrine." *Carskadon v. Diva Int'l, Inc.*, No. 12-cv-01886-RM-KMT, 2014 WL 7403237, at *5 (D. Colo. Feb. 26, 2014) *report and recommendation adopted*, No. 12-cv-01886-RM-KMT, 2014 WL 7403233 (D. Colo. Dec. 29, 2014). The Court has been unable to find any instances of a Colorado court adopting or applying the fiduciary shield doctrine. In the absence of such law, the consideration of all

---

[9] As noted above, the Court may consider evidence outside the pleadings on a request for dismissal pursuant to Rule 12(b)(2). *See Impact Prods.*, 341 F. Supp. at 1189; *see also Dazey Corp. v. Wolfman*, 948 F. Supp. 969, 972 (D. Kan. 1996) (stating that the "parties may submit affidavits and other documentary evidence for the court's consideration" on a Rule 12(b)(2) motion).

of Defendant's contacts with Colorado is required. *See id.* (declining to apply the fiduciary shield doctrine and considering all of the defendant's contacts with Colorado). *Accord Carnrick v. Riekes Container Corp.*, No. 15-cv-01899-CMA-KMT, 2016 WL 740998, at *6 n.1 (D. Colo. Feb. 24, 2016); *Powers v. Emcon Associates, Inc.*, No. 14-cv-03006-KMT, 2016 WL 1111708, at *5 (D. Colo. Mar. 22, 2016).

Therefore, because the Court has found that Plaintiff has sufficiently alleged that Defendant purposefully availed himself of Colorado's laws by entering into a contract with Plaintiff and working with Plaintiff for ten years, and that Plaintiff's injuries arose from this business relationship, Plaintiff has pled a prima facie case for personal jurisdiction.

As Defendant purposefully availed himself of Colorado's laws, and Plaintiff's alleged injuries arise out of Defendant's contacts with Colorado, the Court can exercise jurisdiction over Defendant in this case unless exercising jurisdiction would offend traditional notions of fair play and substantial justice. *Dudnikov*, 514 F.3d at 1070. With minimum contacts established, it is incumbent on Defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 1080. Defendant makes no argument here[10] that the Court's exercise of jurisdiction would be "unreasonable" or offensive to the notions of fair play and substantial justice. Accordingly, the Court finds that it has personal jurisdiction over Defendant with respect to the contract claims.

---

[10]   Defendant makes a related but separate argument that the matter should be transferred to the Northern District of Texas pursuant to 28 U.S.C. § 1404 based on the principles of justice and convenience. *Brief in Support* [#19] at 14. Defendant's argument is addressed below.

b.      Tort claims.

Plaintiff asserts that Defendant committed a variety of torts.  *See generally Am.*
*Compl.* [#14].  Under the Colorado long arm statute, a person is subject to the jurisdiction
of the courts of Colorado, "concerning any cause of action arising from the commission of
a tortious act within [the] state."  *Sports Sci.*, 514 F.3d at 1060.  To satisfy the long arm
statute, there must be a showing that the tortious action occurred within the state and that
the exercise of jurisdiction over the defendant comports with due process.  *Id.* The Court
must first determine whether the Amended Complaint alleges the commission of a tortious
act within the state.  *Id.* Tortious act "implies the total act embodying both cause and effect."
*Id.* (citing *Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, 235 (Colo. 1992)).  Next, the
Court must "undertake a particularized inquiry as to the extent to which the defendant has
purposefully availed [him]self of the benefits of the forum's laws."  *Archangel Diamond Corp.*
*v. Lukoil*, 123 P.3d 1187, 1199-1200 (Colo. 2005).

In *Sports Sci.*, the district court dismissed the plaintiff's tort claims because the
alleged tortious conduct took place in England.  The district court held that because the
tortious conduct did not take place in Colorado, the court did not have jurisdiction over the
tort claims. 514 F.3d at 1060.  The Tenth Circuit reversed, holding that the district court did
have jurisdiction even though the tortious conduct took place outside of Colorado.  *Id.* at
1060-61.  As the Tenth Circuit explained, "[t]he threshold jurisdictional requirement is
established when it is demonstrated . . . 'that tortious conduct in another state ultimately
caused injury in Colorado and that requiring a defense to the tort action in this state would
be consistent with the due process of law.'"  *Id.* (quoting *Fleet Leasing, Inc. v. District Court*,
649 P.2d 1074, 1078 (Colo. 1982)).

The Amended Complaint could provide more detail as to where each alleged tort took place, but it does sufficiently allege that Defendant's tortious conduct, whether it took place in Colorado or elsewhere, caused injury in Colorado. *Am. Compl.* [#14] ¶ 21. Thus, the Court concludes that it has jurisdiction to hear the tort claims, provided that exercising jurisdiction over Defendant comports with due process. As determined above, due process is not threatened.

### B.   Summary Judgment Pursuant to Rule 56

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Pursuant to Fed. R. Civ. P. 56(c), summary judgment should enter if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 277 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the

nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

Defendant bears the initial burden of identifying the basis for his motion and the supporting evidence he believes demonstrates a lack of genuine issue as to any material fact. *Celotex*, 477 U.S. at 323. Because Defendant does not bear the ultimate burden of persuasion at trial, he "may satisfy this burden by identifying 'a lack of evidence for [Plaintiff] on an essential element of [his] claim.'" *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (quoting *Alder v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

When the Defendant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to Plaintiff to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance*

*Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).   Plaintiff must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him.   *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324)).   Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence.   *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).   The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded.   *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

Here, Defendant makes two arguments for summary judgment: (1) Plaintiff's claims are barred by the applicable statute of limitations, and (2) Plaintiff has failed to put forth sufficient evidence to substantiate any claims that the Court finds are not barred, or such claims are plainly refuted by the evidence adduced by Defendant and fail as a matter of law. *Suppl. Brief in Support* [#35] at 7-9.

### 1.   Statutes of limitations.

With the exception of Plaintiff's federal claim for copyright infringement, the Court applies Colorado law to determine the applicable statutes of limitations and whether a particular statute of limitations bars a claim.   *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state. . . . [a]nd whether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern.")

Plaintiff's claims have the following statutory periods:

1. Breach of contract - three years.  Col. Rev. Stat. Ann. § 13-80-101;

2. Fraud - three years.  Col. Rev. Stat. Ann. § 13-80-101;

3. Conversion - two years.  Col. Rev. Stat. Ann. § 13-80-102;

4. Civil theft - two years.  Col. Rev. Stat. Ann. § 13-80-102;

5. Slander - one year.  Col. Rev. Stat. Ann. § 13-80-103;

6. Breach of fiduciary duty - three years.  Col. Rev. Stat. Ann. § 13-80-101;

7. Interference with contract - two years.  Col. Rev. Stat. Ann. § 13-80-102;

8. Consumer Protection Act violation - three years.  Col. Rev. Stat. Ann. § 6-1-115**;**

9. Replevin - three years.  Col. Rev. Stat. Ann. § 13-80-101;

10. Unjust enrichment - three years.  Col. Rev. Stat. Ann. § 13-80-101;

11. Copyright infringement - three years.  17 U.S.C. § 507

"Whether a [Colorado] statute of limitations bars a particular claim is a question of fact," but the issue may be decided as a matter of law "if undisputed facts demonstrate that the plaintiff had the requisite information as of a particular date." *Burns v. Mac*, No. 13-cv-2109-WJM-KLM, 2014 WL 1242032, at *11 (D. Colo. Mar. 26, 2014) (citing *Trigg v. State Farm Mut. Auto. Ins. Co.*, 129 P.3d 1099, 1101 (Colo. App. 2005)).  A cause of action is considered to accrue on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence.  Col. Rev. Stat. Ann. § 13-80-108(1).

In both his original complaint and the Amended Complaint, Plaintiff alleges two dates when he became aware of Defendant's alleged actions: March 6, 2013 and sometime in November 2014.  *Am. Compl.* [#14] ¶¶ 14-15.  On March 6, 2013, Plaintiff alleges that he

discovered during a deposition of a third party that Defendant had been "knowingly or negligently: . . . misrepresenting his role as a subcontractor . . . ; using his misrepresentations to attempt to persuade the client to terminate the relationship with [Plaintiff]; . . . [and ]slandering [Plaintiff] by misrepresenting the integrity of the design and development approaches employed by [Plaintiff][.]" *Id.* ¶ 14.  In November 2014, Plaintiff alleges that he "further discovered [Defendant] was then misrepresenting to the public that he is the owner of the protected designs and has the right to use and sell them to the public." *Id.* ¶ 15.

Here, Plaintiff originally filed this action in state court on March 2, 2015.  *State Court Compl.* [#1-3].  Thus, with the exception of the slander claim,[11] because Plaintiff alleges that his claims arise out of knowledge acquired on either March 6, 2013 or in November 2014, none of the claims are *perforce* barred by the statutes of limitations unless Defendant shows that the "undisputed facts demonstrate that the plaintiff had the requisite information as of a particular date."  *Burns*, 2014 WL 1242032, at *11.

Defendant argues that this is the case, citing to a letter his lawyer sent to Plaintiff on January 5, 2010 (the "Letter") and Plaintiff's responses to the Letter.  *See Appendix in Support of Summary Judgment* [#33] at 10-41.  Defendant argues that these "communications reflect that [Plaintiff] was fully aware of a [sic] potential claims that he apparently believed he might have against [Defendant][.]" *Suppl. Brief in Support* [#35] at

---

[11]   Plaintiff has conceded that the slander claim is barred by the one year statute of limitations. *Response* [#22] at 12 ("Plaintiff would agree the statute of limitations on the one slander incident discovered at deposition March 6, 2013. . . has run[.]").  Accordingly, Defendant's motion is granted as to the slander claim.  *See also* Fed. R. Civ. P. 41(a)(2) ("[A]n action may be dismissed at the plaintiff's request . . . by court order[.]").

4.

In the Letter, Defendant's counsel informed Plaintiff of Defendant's belief that Plaintiff had infringed the intellectual property rights of GVS, Halo, and Defendant.  *Appendix in Support of Summary Judgment* [#33] at 17-20.  For example, Defendant's counsel stated that "all initial schematic designs prepared by Halo constitute the copyright work of Halo. . . . If we learn that any architect or any other person or entity uses my client's schematics or any variation or deviation thereof, without permission, be aware that we will pursue all available legal action."  *Id.* at 18.  Counsel also stated that "[t]his letter as [sic] a formal demand for written assurance that you . . . permanently cease and desist from further importation, advertising, marketing, distribution, and sale of any schematics or derivatives of Halo, GVS, or [Defendant][.]" *Id.*  Defendant also noted that, in one email sent prior to the Letter, Defendant told Plaintiff to "stop using copied creative execution and producing derivatives of [GVS] productions for your own marketing purposes. . . . I will protect the copyright of both [GVS] and Halo[.]"  *Id.* at 16.

Defendant contends that correspondence from Plaintiff in response to the Letter also indicates that Plaintiff had knowledge of his claims premised on breach of contract, misrepresentation, or interference with contractual relations in 2010. *Suppl. Brief in Support* [#35] at 4-5.  For example, Plaintiff wrote to Defendant on January 18, 2010 as follows: "Your last paragraph of this section troubles me greatly as you seem to infer that you would condone your client undertaking [sic] an activity which would subject him and his firm to . . . litigation . . . [for] tortuous [sic] interference of a contractual relationship." *Appendix in Support of Summary Judgment* [#35] at 29.  This statement is in response to a paragraph in the Letter, wherein Defendant's counsel states: "if any of these churches contact my

-22-

clients regarding an explanation for the severance of the business relationship, my clients intend to set them straight with the truth.  Further, my clients will direct them to speak with the churches who have a personal experience with your questionable business tactics, which include Harvest Family Church and Calgary Baptist." *Id.* at 19.

Plaintiff does not dispute the content of the Letter, but claims that the issues raised in this correspondence went unresolved. *Suppl. Response* [#37] at 3.  Specifically, Plaintiff argues that the ownership of the copyrights remained disputed.  *Id.*  Plaintiff also contends that the Letter "does not prove [Plaintiff] knew of any tortious interference with his contractual relations or of any attempts to steal his clients by unlawful inducement at that time or that he knew of claims of ownership by [Defendant] to [Plaintiff's] seminal architectural design work which pre-existed his relationship with [Defendant]." *Id.* at 5. Plaintiff also argues that even if the correspondence "provides evidence of many potential claims available to [Plaintiff] at that time," "there are no facts presented by [Defendant] to refute [Plaintiff's] testimony that he did not discover the presently claimed transgressions (as distinguished from disputed prior transgressions) until 2014." *Suppl. Response* [#37] at 5.

As a preliminary matter, the Court addresses Plaintiff's argument that the statutes of limitations do not bar Plaintiff's claims because the ownership of copyrights remained disputed after the 2010 correspondence between the two parties.  It is, of course, absolutely clear that the ownership of the copyrights is still disputed, as is evident by the existence of this civil action.  However, the resolution of the issues surrounding ownership is irrelevant for a statute of limitations analysis; the relevant question here is whether the "undisputed facts demonstrate that the plaintiff had the requisite information as of a particular date." *Burns*, 2014 WL 1242032, at *1.

Here, the Court finds that there is no genuine dispute of material fact that when Plaintiff received the Letter, he knew or should have known the basis for his claims concerning Defendant's use of the copyrighted works at issue. *Id.* Thus, because Plaintiff had this knowledge in 2010, the statutory period began to run at that time for Plaintiff's claims concerning the copyrighted works. The Court addresses each claim with respect to the statute of limitations below.

a.   *Breach of contract.*

Plaintiff claims that Defendant breached the contract between the parties by "failing to provide the services for the exclusive benefit of [Plaintiff], by converting the intellectual property of [Plaintiff] to his own use, refusing to return work product for which he has been paid[.]." *Am. Compl.* [#14] ¶ 25. Plaintiff also alleges that Defendant breached his contract by "interfering with the relations between [Plaintiff]" and his clients. *Am. Compl.* [#14] ¶ 25.

Based on the Letter, it is clear that Plaintiff was aware that Defendant believed that the work product in question was his own or owned by one of his companies. *Appendix in Support of Motion to Dismiss* [#19-1] at 5. Indeed, Plaintiff himself concedes that the parties disputed the ownership of intellectual property in 2010. *Suppl. Reponse* [#37] at 3. Plaintiff's Complaint was filed on April 24, 2015, more than three years after Plaintiff had knowledge of the alleged breach with respect to copyrighted materials. *Am. Compl.* [#14]. Therefore, the breach of contract claim relating to Defendant's use of Plaintiff's intellectual property is barred by the three-year statute of limitations for breach of contract claims. *See* Col. Rev. Stat. Ann. § 13-80-101. Accordingly, Defendant's motion is **granted** with respect to the portion of Plaintiff's claim alleging breach of contract based on the intellectual property.

-24-

With respect to Plaintiff's allegation that Defendant, "interfer[ed] with the relations between [Plaintiff]" and Plaintiff's clients,[12] Defendant has put forth some evidence that Plaintiff may have known of his cause of action in 2010.   *Am. Compl.* [#14] ¶ 25. Specifically, Plaintiff's accusation that Defendant's counsel condoned tortious interference with contractual relations gives some weight to Defendant's argument here.   *See Appendix in Support of Summary Judgment* [#35] at 29.   However, Plaintiff alleges in the Amended Complaint that he discovered specific instances of Defendant's actions during a deposition in March 2013.   *Am. Compl.* [#14] ¶ 14.   He also argues that each instance is a separate tortious act.   *Suppl. Response* [#37] at 5.   Moreover, the written contract purportedly breached is not before the Court.   Therefore, a dispute of fact exists with respect to when Plaintiff discovered the alleged interference by Defendant with Plaintiff's clients and hence when the statutory period began running with respect to this portion of Plaintiff's claim. Accordingly, entry of summary judgment on this portion of the breach of a contract claim is not appropriate.

> b.    *Fraud.*

Plaintiff claims that Defendant engaged in fraud by "intentionally misrepresent[ing] his promised performance for the sole use and benefit of [Plaintiff]."   *Am. Compl.* [#14] ¶ 28. He specifies that Defendant's "promises" relate to the "ownership of the original design work, the detailed additions being for the use and benefit of [Plaintiff] and specific clients of

---

[12]   The Court notes that this latter allegation appears to be directed towards Defendant's alleged interference with contractual relationships, a separate tort claim.   *See id.* ¶¶ 50-51. Whether these alleged facts may be used to support both the breach of contract claim and the interference with contractual relations claim – in addition to the numerous other claims in which this allegation appears – has not been argued or raised by the parties on this Motion, and thus the Court does not address it here.

[Plaintiff] and the obligation to return paid work product to [Plaintiff][.]" *Id.* ¶ 27.  He also alleges that Defendant was "concealing that he was soliciting business from customers[.]" *Id.* ¶ 28.

The Letter states that it is a "formal demand" that Plaintiff "cease and desist from further importation, advertising, marketing, distribution, and sale of any schematics or derivatives of Halo, GVS, or Stan" and also requests that Plaintiff "destroy [his] inventory of all infringing material." *Appendix in Support of Summary Judgment* [#33] at 18.  This statement clearly puts Plaintiff on notice that designs Defendant or his companies created while employed with Plaintiff were not being used for the sole use and benefit of Plaintiff. Therefore, the Letter gave Plaintiff knowledge of this alleged misrepresentation as of January 2010, more than three years prior to the filing of this claim.  As a result, this portion of the claim is barred by the statute of limitations.  *See* Col. Rev. Stat. Ann. § 13-80-101. Accordingly, Defendant's motion is **granted** as to this portion of the fraud claim.

Plaintiff also claims that Defendant engaged in fraud by concealing that he was soliciting business from customers, and exploiting private customer lists for Defendant's own benefit. *Am. Compl.* [#14] ¶ 28.  Nothing in the Letter puts Plaintiff on notice that Defendant was engaging in this type of behavior.  *Appendix in Support of Summary Judgment* [#33] at 17-19.  Further, none of the other correspondence contains any language indicating that Plaintiff was aware or should have been aware of this claim.  *See Id.* at 10-41.

Thus, Defendant has not put forth sufficient evidence to demonstrate that these claims are barred by the statute of limitations, as Plaintiff alleges that he only became aware of these acts in 2013 at the earliest. *Am. Compl.* [#14] ¶ 14.  There is a genuine issue of material fact regarding when Plaintiff discovered that Defendant was soliciting business from

Plaintiff's customers and exploiting Plaintiff's customer lists, hence entry of summary judgment on the basis of the statute of limitations is not appropriate.

> ### c.   Conversion.

Plaintiff claims that Defendant engaged in conversion by "wrongfully convert[ing] the intellectual property of [Plaintiff] to his own use without authorization." *Am. Compl.* [#14] ¶ 32. As noted above, the Letter puts Plaintiff on notice that Defendant and his companies claimed ownership over "animations and renderings" and "schematic designs," and also requested that Plaintiff "cease and desist" the usage of this intellectual property. *Appendix in Support of Summary Judgment* [#33] at 17-19. Based on the Letter, there is no genuine issue of material fact that Plaintiff had notice that Defendant claimed ownership of the intellectual property more than two years prior to the filing of this claim. *See* Col. Rev. Stat. Ann. § 13-80-102. Accordingly, Defendant's motion is **granted** as to the conversion claim.

> ### d.   Civil theft.

Plaintiff claims that Defendant "knowingly obtained control over the intellectual property" at issue, and that Defendant "intend[ed] to deprive [Plaintiff] permanently of the benefit of the intellectual property." *Am. Compl.* [#14] ¶ 35. The "requisite information" for this claim, therefore, is identical to that of Plaintiff's conversion claim. *Burns*, 2014 WL 1242032, at *1. Thus, because the Letter put Plaintiff on notice that Defendant claimed the intellectual property at issue, Plaintiff knew or should have known of the cause of his injury more than two years prior to the filing of this claim. Col. Rev. Stat. Ann. § 13-80-108(1). Accordingly, Defendant's motion is **granted** as to the civil theft claim. *See* Col. Rev. Stat. Ann. § 13-80-102.

e.      *Breach of fiduciary duty.*

Plaintiff claims that the entrustment of intellectual property and creative work product to Defendant created a fiduciary duty in Defendant to honor Plaintiff's ownership of the intellectual property. *Am. Compl.* [#14] ¶ 48.  Plaintiff alleges that this duty was breached when Defendant "convert[ed] said property to his own use and interfer[ed] with the business relationships of [Plaintiff]." *Id.* ¶ 49.  The Court **grants** the request for summary judgment on the first portion of this claim – i.e., that Defendant breached his fiduciary duty by "converting [intellectual] property to his own use" – as no genuine dispute of material fact exists as to Plaintiff's knowledge in 2010 of Defendant's and his companies' claims to the copyrighted materials.  Thus, this claim is barred by the three-year statute of limitations. *See* Col. Rev. Stat. Ann. § 13-80-101.

With respect to Plaintiff's claim that Defendant breached his fiduciary duty to Plaintiff by "interfering with the business relationships of [Plaintiff]," *Am. Compl.* [#14] ¶ 49, Defendant argues that Plaintiff's "communications reflect that he was fully aware of a [sic] potential claims that he apparently believed he might have against [Defendant][.]" *Suppl. Brief in Support* [#35] at 4.  Plaintiff responds that although the correspondence "provides evidence of many potential claims available to [Plaintiff] at that time," "there are no facts presented by [Defendant] to refute [Plaintiff's] testimony that he did not discover the presently claimed transgressions (as distinguished from disputed prior transgressions) until 2014." *Suppl. Response* [#37] at 5.

The Court agrees with Plaintiff.  Although the response sent by Plaintiff vaguely references that "[Defendant], Halo Architects, and [GVS] are guilty of torsos [sic] interference," it is unclear here to which contracts Plaintiff refers in the letter. *Appendix in*

*Support of Summary Judgment* [#33] at 23.  Plaintiff claims that they are separate contracts, and the Amended Complaint alleges that the parties worked together on twenty-five different projects.  *See Suppl. Oaster Affidavit* [#37-2] ¶ 12-13; *Am. Compl.* [#14] ¶ 10.  Thus, the Court finds that a dispute of fact exists regarding when the claim accrued as to the second part of the claim for breach of fiduciary duty premised on interference with Plaintiff's business relationships, and summary judgment is therefore not appropriate on statute of limitations grounds with respect to that portion of the claim.  *See* Col. Rev. Stat. Ann. § 13-80-101.

>          f.          *Interference with contract.*

Plaintiff claims that Defendant interfered with Plaintiff's contractual relationships.  He alleges that he discovered at least one instance of Defendant's interference on March 6, 2013.  *Am. Compl.* [#14] ¶ 14.  An interference with a contract claim is subject to a two-year statute of limitations.   *See* Col. Rev. Stat. Ann. § 13-80-102.   Here, Plaintiff filed his complaint in state court on March 3, 2015 – less than two years after he claims he learned of the interference with contractual relations.  *State Court Compl.* [#1-3].  Further, as noted above, the correspondence between the parties reviewed by the Court shows, at best, that Plaintiff *may* have had some knowledge of a cause of action with respect to *some* contracts. *Appendix in Support of Summary Judgment* [#33] at 10-41.  However, Defendant, as the moving party, has the burden to show an absence of a genuine issue of material fact.  *Adler*, 144 F.3d at 670-71.  Thus, because Defendant has not put forth evidence that demonstrates that Plaintiff undisputably had knowledge of his cause of action prior to March 6, 2013, the Court finds that the statute of limitations does not bar this claim.

g.     *Colorado Consumer Protection Act violation.*

Plaintiff claims that Defendant violated the Colorado Consumer Protection Act ("CCPA") by selling Plaintiff's protected designs on a website.  *Am. Compl.* [#14] ¶ 54. Plaintiff allegedly learned of this activity during his investigation in Defendant in November 2014.  *Am. Compl.* [#14] ¶ 15.  CCPA violations are subject to a three-year statute of limitations.  *See* Col. Rev. Stat. Ann. § 6-1-115.  Hence, Plaintiff's CCPA claim is not barred by the statute of limitations on its face.

Further, although the Court has found that Plaintiff knew of Defendant's or Defendant's companies' claims to ownership of copyrights which Plaintiff claims to own here, the allegation that Defendant specifically violated the CCPA by virtue of his sale of the copyrights on a website is distinct from Plaintiff's other claims based merely on Defendant's use or representation of ownership of the copyrights (which was clearly at issue in the 2010 Letter).  Defendant has not put forth *any* evidence demonstrating that Plaintiff knew or should have known that Defendant was selling the copyrighted materials on the internet. *See Appendix in Support of Summary Judgment* [#33] at 10-41.  Accordingly, in the absence of such undisputed evidence, the statute of limitations does not bar this claim.

h.     *Replevin.*

Plaintiff claims that he "is entitled to repossession of the business and intellectual property" from Defendant.  *Am. Compl.* [#14] ¶ 62.  Because the Court has already determined that Plaintiff knew of the basis for such a claim based on the Letter, this claim is barred by the three-year statute of limitations.  *See* Col. Rev. Stat. Ann. § 13-80-101. Accordingly, Defendant's motion is **granted** as to the replevin claim.

>           i.      *Unjust enrichment.*

Plaintiff claims that Defendant's "deceit and bad faith allowed him to benefit and receive gain from customers, web sales and other commercial uses of [Plaintiff's] intellectual property." *Am. Compl.* [#14] ¶ 70.  Because of this, Plaintiff alleges that he is entitled to restitution. *Id.*  Plaintiff allegedly learned of this activity during his investigation of Defendant in November 2014. *Am. Compl.* [#14] at 3.  "Equitable claims – such as those made here for unjust enrichment . . . are technically subject to an equitable laches rather than a legal statute of limitations analysis." *Sterenbuch v. Gross*, 266 P.3d 428, 436 (Colo. App. 2011) (quoting *Interbank Invs., L.L.C. v. Vail Valley Consol. Water Dist.*, 12 P.3d 1224, 1230 (Colo. App. 2000)).  However, absent extraordinary circumstances, a court will usually grant or withhold relief by analogy to the statute of limitations relating to actions at law of like character. *Sterenbuch*, 266 P.3d at 436.  Unjust enrichment is a form of relief in quasi-contact or contract implied in law. *Id.* at 437.  Thus, the time within which to assert such a claim is assessed under the three-year statute of limitations for contract actions. *Id.*  Plaintiff alleges that he was not aware that Defendant was profiting from the intellectual property in question until the investigation in 2014. *Am. Compl.* [#14] ¶ 15.  Further, Defendant has not put forth any evidence demonstrating that Plaintiff had knowledge of Defendant's alleged profit from these materials prior to November 2014.  Thus, because the action was brought within three years of the discovery of the alleged unjust enrichment, this claim is not barred by the statute of limitations.

>           j.      *Copyright infringement.*

Plaintiff alleges that Defendant "has used, and continues to use the Copyrighted materials in his own architectural business for profit and has sold the protected Copyrighted

materials on the internet without consent or license from [Plaintiff]." *Am. Compl.* [#14] ¶ 78. Plaintiff alleges that he has exclusive right to use and reproduce the copyrighted materials and to distribute the copyrighted materials to the public.  *Id.* ¶ 79.

A claim for copyright infringement must be brought "within three years after the claim accrued."  17 U.S.C. § 507(b).  Under the majority view, a claim "for copyright infringement accrues when one has knowledge of a violation or is chargeable with such knowledge." *Diversey v. Schmidly*, 738 F.3d 1196, 1200 (10th Cir. 2013) (quoting *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994)).  "Each act of infringement is a distinct harm."  *Diversey*, 738 F.3d at 1202 (quoting *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004)).

Here, Defendant argues that the statute of limitations bars Plaintiff's copyright infringement claim based on the Letter.  *Suppl. Brief in Support* [#35] at 3.  However, while the Letter states that Defendant was the owner of animations and schematic designs, the Letter makes no mention of selling the materials, nor is there any indication from Plaintiff's correspondence sent in response to Defendant that he knew of the website used by Defendant or Defendant's companies to sell Plaintiff's alleged copyrighted materials. Plaintiff alleges that he did not discover Defendant was doing so until after Plaintiff investigated Defendant in November 2014.  *Am. Compl.* [#14] ¶ 15.  Thus, because Plaintiff did not learn of Defendant's use of Plaintiff's materials until 2014, Plaintiff's claim of infringement accrued in 2014.  *Diversey*, 738 F.3d at 1202.  By extension, because Plaintiff filed his Amended Complaint on May 19, 2015 – less than three years after he became aware of the alleged infringement – this claim is not barred by the statute of limitations.  17 U.S.C. § 507(b).

k.    *Remaining claims.*

In conclusion, the following claims remain in their entirety: the interference with contractual relations claim; the CCPA claim; the unjust enrichment claim; and the copyright infringement claim.  The following claims survive only to the extent that they are premised on the allegation of interference with contractual relations: breach of contract; fraud; and breach of fiduciary duty.

## 2.    Substantive arguments.

For purposes of addressing Defendant's arguments that he is entitled to summary judgment as a matter of law on certain of Plaintiff's claims, the Court divides those claims into two categories.

First, Plaintiff's claims for violation of the CCPA, unjust enrichment, and copyright infringement are premised on Defendant's alleged sale of copyrighted materials through the internet.  *See Am. Compl.* [#14] ¶¶ 54-56, 70, 78.  This reading is clear based on the allegations in Plaintiff's Amended Complaint.  Specifically, as an essential element of a CCPA claim, a plaintiff must show that "the defendant engaged in an unfair or deceptive trade practice[.]"[13]  *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146 (Colo. 2003).  Here, the "unfair and deceptive trade practice" alleged by Plaintiff is that Defendant, "[i]n utilizing the internet to resell the pirated plans" has committed "fraud upon the public[.]" *Am. Compl.* ¶¶ 54-56.  To prove unjust enrichment, a plaintiff must

---

[13]   The other elements of a CCPA claim are: "(2) that the challenged practice occurred in the course of the defendant's business; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered the injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146 (Colo. 2003).

demonstrate that (1) at [his or her] expense, (2) the defendant received a benefit (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying. *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1221 (10th Cir. 2004). Here, Plaintiff alleges that "[Defendant's] deceit and bad faith allowed him to benefit and receive gain from customers, web sales and other commercial uses of [Plaintiff's] intellectual property." *Am. Compl.* [#14] ¶ 70. Lastly, with respect to a claim under the Copyright Act, Section 106 of the Copyright Act grants to copyright owners the exclusive right: (i) to reproduce their work; (ii) prepare derivative works; (iii) distribute copies of the work; (iv) perform the work publicly; and (v) display the work publicly. 17 U.S.C. § 106. Here, Plaintiff alleges that Defendant violated Section 106, stating that he "has used, and continues to use the Copyrighted materials in his own architectural business for profit and has sold the protected materials on the internet without consent or license[.]" *Am. Compl.* [#14] ¶ 78.

Lastly, the second category of Plaintiff's claims are those based on allegations of misrepresentation and interference with contractual relations, i.e. the breach of contract claim, the fraud claim, the breach of fiduciary duty claim, and the interference with contractual relations claim. *Id.* ¶¶ 25, 28, 49, 51.

### a.   Claims premised on copyright infringement.

Defendant contends that Plaintiff's claims based on copyright infringement fail as a matter of law. Defendant argues that "[Plaintiff] has sued Robertson, individually, for claims clearly linked to [GVS] or Halo Architects[.]" *Suppl. Brief in Support* [#35] at 7. In essence, Defendant argues that Plaintiff's Amended Complaint asserts claims against Defendant individually for actions all taken by Defendant's corporations – GVS and Halo – or by Defendant acting in his capacity as an officer of those companies. Plaintiff responds that

"[t]he correspondence exchange between the parties demonstrates[] a generic grouping of parties as 'my clients' . . . , leaving distinctions of respective party or liability unresolved without further testimony[.]" *Suppl. Response* [#37] at 3.

As noted above, Plaintiff bases his CCPA, unjust enrichment, and copyright infringement claims on the allegation that Defendant used copyrighted materials in his own businesses and also sold these materials on the internet.  *Am. Compl.* [#14] ¶¶ 54-56, 70, 78.  In support of this, Plaintiff has attached to the Amended Complaint a schematic design and a "List of Known Copyright Infringements" which lists the following alleged infringements: (1) "Stanley Robertson's website www.worshipplaces.com," (2) Harvest Family Church, and (3) Triumph Church.  *Am. Compl. Ex. B* [#14-2].

The Court finds that Defendant has sufficiently adduced evidence to show that he is not the proper party named by Plaintiff's Amended Complaint, and that he has not performed any of the alleged infringing acts complained of by Plaintiff.  Here, Plaintiff alleges that Defendant Stanley Robertson infringed Plaintiff's copyrighted works by distributing them on a website, www.worshipplaces.com, and (vaguely) that there were infringements relating to "Harvest Family Church" and "Triumph Church."  *Am. Compl.* [#14] ¶ 72; *Am. Compl. Ex. B* [#14-2].  However, the evidence produced by Defendant shows that GVS – not Defendant – owns and operates the website allegedly engaged in the unlawful distribution of copyrighted materials.  *Appendix in Support of Motion for Summary Judgment* [#33] at 2, 3.  Defendant has attached articles of incorporation for both GVS and Halo that were filed with the Secretary of State in Texas.  *Id.* at 5-9.  These documents are signed and notarized.  *Id.*  Defendant also produced contracts showing that the work performed for Harvest Family Church, Triumph Church, and Christ Church was performed by GVS or Halo

– not Defendant individually.  *Appendix in Support of Motion for Summary Judgment (Second)* [#34] at 45-62.  Thus, the Court finds that Defendant has put forth evidence showing that Defendant's companies – not Defendant – have engaged in the actions that form the basis of Plaintiff's copyright and CCPA claims, i.e. unlawful use and distribution.  *See United States v. Van Diviner*, 822 F.2d 960, 963 (10th Cir. 1987) ("Ordinarily, a corporation is regarded as a separate entity distinct from the individuals comprising it." (citing *Moline Properties v. Commissioner*, 319 U.S. 436, 439 (1943)); *see also Skidmore, Owings & Merrill v. Canada Life Assur. Co.*, 907 F.2d 1026, 1027 (10th Cir. 1990) ("Disregarding the corporate form is a drastic remedy.  This court recently stated, '[C]orporate veils exist for a reason and should be pierced only reluctantly and cautiously.  The law permits the incorporation of businesses for the very purpose of isolating liabilities among separate entities.'" (quoting *Cascade Energy & Metals Corp. v. Banks*, 896 F.2d 1557, 1576 (10th Cir.1990)).  Thus, the Court finds that Defendant has satisfied his burden to show an absence of a genuine dispute of material fact regarding the identity of the allegedly infringing entities, and thus the burden shifts to Plaintiff to establish that a dispute of fact exists.  *Anderson*, 277 U.S. at 248.

Plaintiff argues that "[o]wnership of copyrights remain[s] disputed" and states that "[Defendant] clearly says [] he retained ownership of 'any intellectual property that GVS or Halo Architects produced or that I designed[.]'"[14] *Suppl. Response* [#37] at 4.  However, even assuming that the copyrights are owned by Plaintiff for the purposes of this motion,

---

[14]  Plaintiff misquotes Defendant in a misleading way.  Defendant actually states in his affidavit the following: "At all relevant times, **GVS and Halo Architects, or myself as the Architect of Record**, retained ownership of any intellectual property that GVS or Halo Architects produced or that I designed."  *Appendix in Support of Motion for Summary Judgment* [#33] at 4 (emphasis added).

Plaintiff must nevertheless support his contention that Defendant – and not Defendant's companies – engaged in the allegedly infringing acts giving rise to the CCPA, unjust enrichment, and copyright claims.  *Anderson*, 277 U.S. at 248.  Plaintiff's only argument here is that correspondence with Defendant and Defendant's counsel is vague about whether Defendant or Defendant's companies claimed ownership of the copyrighted materials.  *Suppl. Response* [#37] at 4.  But claiming ownership of a copyright one does not own is not, by itself and absent any other conduct, a violation of the Copyright Act.  17 U.S.C. § 106.  Further, even if claiming ownership could constitute a cause of action for violation of the CCPA or unjust enrichment, these claims would then be barred by the statute of limitations, as the Letter sent by Defendant's counsel in 2010 notified Plaintiff that Defendant claimed ownership over the copyrighted materials.  *See* Col. Rev. Stat. Ann. § 6-1-115; Col. Rev. Stat. Ann. § 13-80-101.

Finally, it is also clear that Plaintiff's unjust enrichment claim in particular is preempted by the copyright act.  Section 301(a) of the Copyright Act provides that state law claims are preempted if "(1) the work is within the scope of the 'subject matter of copyright' as specified in 17 U.S.C. §§ 102 and 103; and (2) the rights granted under state law are equivalent to any exclusive rights within the scope of the federal copyright as set out in 17 U.S.C. § 106."  *Gates Rubber Co., v. Brando Chem. Indus., Ltd.*, 9 F.3d 823, 847 (10th Cir. 1993); *see* 17 U.S.C. § 301(a).  "When a right defined by state law may be abridged by an act which, in and of itself, would infringe one of the exclusive rights [under Section 106], the state law in question must be deemed preempted."  *R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1147 (10th Cir. 2009) (quoting *Ehat v. Tanner*, 780 F.2d 876, 878 (10th Cir.1985).  Based on Plaintiff's allegations, it is impossible for Plaintiff to prove the copyright

claim but not the unjust enrichment claim.  If Plaintiff successfully demonstrates that Defendant infringed on his copyright, he has demonstrated that there was unjust enrichment.  Because the claims both include copyrighted materials, and because the unjust enrichment claim is the equivalent to a Copyright Act violation, the unjust enrichment claim is preempted by the Copyright Act.  *See* 17 U.S.C. § 301(a); *see also R.W. Beck*, 577 F.3d at 1147 (finding that an unjust enrichment claim is preempted by the Copyright Act).

Thus, because Defendant has satisfied his burden to show that he did not perform any of the allegedly infringing actions in his individual capacity,[15] and Plaintiff has not offered any evidence or argument which creates a genuine issue of material fact, the Court **grants** the request for summary judgment with respect to Plaintiff's CCPA claim, unjust enrichment claim, and copyright claim.[16]

   b. *Claims premised on interference with contractual relations.*[17]

Defendant argues that these claims fail as a matter of law.  Specifically, Defendant

---

[15] Plaintiff also alleges that Defendant infringed on copyrighted materials owned by Plaintiff and Patrick Morgan, who has "assigned all his rights to pursue and collect upon claims against [Defendant]." *Assignment* [#14-1].  Because the Court finds that Defendant has shown that his companies – and not him individually – performed the actions forming the basis of Plaintiff's claims, the Court does not reach this argument.

[16] The Court also notes that the parties dispute whether Plaintiff can bring copyright infringement claims with respect to copyrights purportedly assigned from Morgan to Plaintiff.  Because the Court finds that none of the allegedly infringing actions are appropriately brought against Defendant here, the Court does not reach this issue.

[17] With respect to these claims, Defendant appears to only argue that Plaintiff has failed to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), as he does not make any additional arguments in the supplemental briefing supplied to the Court pertaining to summary judgment, nor does Defendant cite to any evidence in support of his arguments.  *See generally Brief in Support* [#19]; *Suppl. Brief in Support* [#35].  Nonetheless, the Court analyzes these arguments pursuant to Rule 56 because the Court converted the Motion to one for summary judgment.  *See Minute Order* [#36].

argues that Plaintiff has not sufficiently alleged a breach of contract claim because "these allegations do not amount to any breach of contract. [Plaintiff] provides no specific contract and does not identify which portion of the agreement was breached." *Brief in Support* [#19] at 10. Defendant argues that Plaintiff's interference with contractual relations claim fails because "[Plaintiff] does not even identify the contract or contracts that [Defendant] has allegedly interfered with[.]" *Id.* at 11.

The Court does not agree with Defendant's assertion that Plaintiff must provide a copy of any contracts to sufficiently allege a claim for breach of contract or interference with contractual relations. Although a movant may "meet the burden of production required to support summary judgment," by "point[ing] to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law," the fact that Plaintiff has not provided the specific contracts here does not show an absence of a genuine dispute of material fact. *United States v. Simons*, 129 F.3d 1386, 1388 (10th Cir. 1997) (quoting *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992). Here, it is undisputed that a contract existed between the Plaintiff and Defendant (in his individual capacity) at some point during the parties' business relationships. *Am. Compl.* [#14] ¶ 2; *Suppl. Brief in Support* [#35] at 2. It is undisputed that the parties worked together on a myriad of projects with numerous clients. *Id.* Thus, the Court finds that a genuine dispute of material fact remains as to these two claims.

However, the Court reaches the opposite conclusion with respect to Plaintiff's fiduciary duty and fraud claims. First, Defendant argues that Plaintiff has not alleged that a fiduciary duty even exists here, and that the existence of a contract alone does not per se support the allegation that a fiduciary duty existed. *Brief in Support* [#19] at 10-11. Under

Colorado law, a plaintiff must show, as a prerequisite for a breach of fiduciary duty claim, that the defendant was "acting as a fiduciary of the plaintiff[.]" *Lindeman v. The Corp. of the President of the Church of Jesus Christ of Latter Day Saints*, 43 F. Supp. 3d 1197, 1212 (D. Colo. 2014).  Although a fiduciary relationship typically involves a special relationship, such as an attorney-client relationship, a fiduciary duty can be created "when one party has a high degree of control over the property or subject matter of another, or when the benefiting [sic] party places a high level of trust and confidence in the fiduciary to look out for the beneficiary's best interest." *MDM Grp. Associates, Inc. v. CX Reinsurance Co.*, 165 P.3d 882, 889 (Colo. App. 2007) (quoting *Bailey v. Allstate Ins. Co.*, 844 P.2d 1336 (Colo. App. 1992)).

Here, Plaintiff's alleges that Defendant owed a fiduciary duty by virtue of "entrustment of intellectual property and creative work product[.]" *Am. Compl.* [#14] ¶ 48.  Plaintiff does not allege that a confidential relationship existed, or that Defendant's control over Plaintiff's property was of such a degree that Plaintiff reposed a "high level of trust and confidence" in Defendant. *MDM Grp. Associates*, 165 P.3d at 889.  Rather, Plaintiff's allegation appears to be nothing more than an assertion that Defendant breached his contract with Plaintiff; however, the existence of a contract alone does not create a fiduciary duty. *Cf. Hess Oil Virgin Islands Corp. v. UOP, Inc.*, 861 F.2d 1197, 1201 (10th Cir. 1988) ("[N]o tort duty can be imposed on a party where that party's same duties and rights are specifically defined by contract.") (citing *Isler v. Texas Oil & Gas Corp.*, 749 F.2d 22 (10th Cir. 1984)).

Similarly, the Court finds that Plaintiff's fraud claim fails as a matter of law.  Defendant  argues that Plaintiff has not sufficiently pled a claim for fraud under Rule 9(b). *Brief in Support* [#19] at 10.  The Court agrees.  Rule 9(b) states "[i]n all averments of fraud

or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud." *U.S. ex rel. Schwartz v. Coastal Healthcare Grp., Inc.*, 2000 WL 1595976, at *3 (10th Cir. 2000). The Tenth Circuit has held that the complaint must "set[ ] forth the factual basis for the plaintiff's belief." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1237 (10th Cir. 2000). Here, the Amended Complaint contains nothing more than conclusory allegations that Defendant "intentionally misrepresented his promised performance" in order to "induce the contract[.]" *Am. Compl.* [#14] ¶ 28. No specifics are set forth at all. Accordingly, the Court **dismisses** the breach of fiduciary duty and fraud claims.[18]

## C.   Transfer of Venue[19]

Under 28 U.S.C. § 1404(a), a district court may transfer an action "[f]or the convenience of parties and witnesses, [and] in the interest of justice, . . . to any other district or division where it might have been brought." In considering a motion to transfer under § 1404(a), the courts in the Tenth Circuit weigh the following factors:

the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance

---

[18]   All of Plaintiff's claims, save the fraud claim, are dismissed with prejudice because they fail as a matter of law. *See Gee v. Pacheco*, 627 F.3d 1178, 1181 (10th Cir. 2010) (affirming dismissal with prejudice of claims as barred by the statute of limitations); *Helmick v. Utah Valley State Coll.*, 394 F. App'x 465, 467 (10th Cir. 2010) (dismissal based on the merits is with prejudice). Plaintiff's fraud claim, however, is dismissed without prejudice pursuant to Rule 9(b). *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (stating that prejudice should not attach to a dismissal when a plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

[19]   The Court notes that Defendant's request to transfer the case is not made in a separate motion, in contradiction of D.C.COLO.LCivR 7.1(d). Nevertheless, for purposes of thoroughness, the Court examines the request.

of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and[ ] all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (quoting *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991)).   Further, the "party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) (internal quotation marks omitted). "Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue." *Id.* at 966.

None of the factors set forth above weighs in favor of Defendant.   Defendant, in requesting that the Court transfer the case to the Northen District of Texas-Lubbock Division, argues that the court should transfer the case for the convenience of the parties. Defendant resides in Texas. *Am. Compl.* [#14] ¶ 1.  The Court acknowledges that it would likely be more convenient for Defendant to proceed in this matter in a Texas court, but the Court does not find this consideration to be availing. *Scheidt*, 956 F.2d at 966.  Defendant does not meet his burden here, as he does not even address the factors set forth by the Tenth Circuit. *See Country Chrysler*, 928 F.2d at 1516.

Further, a more practical reason exists to deny this portion of the Motion.  This action was removed by Defendant and subject matter jurisdiction was based on diversity jurisdiction. *Notice of Removal* [#1].   However, no amount in controversy is alleged by Plaintiff other than a $500,000 amount mentioned in the slander claim, which has been

dismissed. *Am. Compl.* [#14] ¶ 43.   Nonetheless, although the original complaint did not assert any claims for copyright infringement, the Amended Complaint added such a claim, making subject matter jurisdiction readily apparent based on federal question jurisdiction. *See id.* ¶¶ 72-83; *State Court Compl.* [#1-3].   This claim too has been dismissed by the Court, and the only claims remaining are Plaintiff's breach of contract, breach of fiduciary duty, and interference with contractual relations claims – all state law claims, and all without any mention of an amount in controversy.

Thus, because Defendant has not shown that transfer is proper pursuant to 28 U.S.C. § 1404, and because it is not even clear that the Court has subject matter jurisdiction under 28 U.S.C. § 1332, the Court **denies** the request to transfer.

### III. Conclusion

For the foregoing reasons, the Motion [#18] is **GRANTED IN PART** and **DENIED IN PART**.

IT IS HEREBY **ORDERED** that Plaintiff's conversion, civil theft, slander, bad faith breach of contract, breach of fiduciary duty, CCPA, replevin, injunction, unjust enrichment, and copyright infringement claims are **DISMISSED WITH PREJUDICE**.

IT IS FURTHER **ORDERED** that Plaintiff's fraud claim is **DISMISSED WITHOUT PREJUDICE**.[20]

IT IS FURTHER **ORDERED** that the Motion [#18] is **DENIED** with respect to the breach of contract and interference with contractual relations claims.

IT IS FURTHER **ORDERED** that the request to transfer pursuant to 28 U.S.C. § 1404 is **DENIED**.

IT IS FURTHER **ORDERED** that parties shall show cause in writing as to why this action should not be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) **on or before April 15, 2016**.

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge

Dated: March 28, 2016

---

[20] *See Reynoldson*, 907 F.2d at 127 (stating that prejudice should not attach to a dismissal when a plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").